**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHUNYAN WANG,<br><br>      Petitioner,<br><br>      v.<br><br>JAMES JANECHA et al,<br><br>      Respondents. | Case No. 5:26-cv-03668-MAR<br><br>**ORDER GRANTING PETITION FOR HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On July 2, 2026, Petitioner Chunyan Wang ("Petitioner"), an immigration detainee proceeding through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"), challenging his re-detention in immigration custody. Dkt. 1, ("Pet."). On July 9, 2026, Respondents filed an Answer to the Petition. Dkt. 8, ("Answer"). On July 9, Petitioner filed a Reply. Dkt. 9, ("Reply"). For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on Petitioner's prior conditions of release.

///

///

## II.

## FACTUAL BACKGROUND[1]

Petitioner is a citizen of China who entered the United States on December 24, 2024. Pet. at 4. Petitioner was briefly detained by immigration officers and then released on parole. Id. Since her release from custody, Petitioner obtained work authorization, filed an application for asylum, and has lived and worked in California. Id. Prior to her detention, she was gainfully employed in a warehouse. Id. Pursuant to her release, Petitioner was instructed to report to ICE, which she did. Id. Respondents allege that, on December 30, 2025, Petitioner was arrested for violation of California Penal Code § 496(A) - Receiving Stolen Property. Answer at 2 (citing Form I-213). Petitioner contends that she has not been charged with, prosecuted for, or convicted of any crime. Reply at 2 (citing Certificate of the Clerk of the Superior Court of California, County of Los Angeles (West Covina Courthouse) executed June 29, 2026).[2]

On January 27, 2026, Petitioner was taken into custody by immigration officers at a scheduled check-in. Pet. at 7. Prior to her re-detention, Petitioner did not receive any pre-deprivation hearing to determine whether Petitioner posed a flight risk or danger to the community, nor did she receive written notice of Respondents' intent to revoke her release. Pet. at 7, 17. Petitioner is detained at the Adelanto Detention Facility. Id. at 2.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner argues that she is being detained in violation of her Fifth Amendment due process rights because she did not receive adequate notice or a meaningful

---

1 The following summary of relevant facts is based on the facts alleged in the Petition, Reply, and exhibits. Dkts. 1, 9. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so unless noted herein. Dkt. 8. Therefore, the Court considers the undisputed facts to be conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

2 The Court takes judicial notice of this official record. See Fed. R. Evid. 201.

2

opportunity to be heard prior to her detention and because he was not arrested pursuant to a warrant.  Pet. at 18–19.  Petitioner also argues that her detention violates her Fifth Amendment rights because it is not tethered to one of the two constitutional base for civil immigration detention.  Pet at 19–20.

Petitioner seeks immediate release from custody.  <u>Id.</u> at 20.  Petitioner also seeks an order enjoining Respondents from re-detaining Petitioner unless and until a hearing can be held before a neutral adjudicator to determine whether her re-incarceration would be lawful because the government has shown that she is a danger or a flight risk by clear and convincing evidence.  <u>Id.</u>  Petitioner also requests reasonable costs and attorney fees.  <u>Id.</u> at 21.

In their Answer, Respondents argue that Petitioner has not shown that the government lacked the authority to detain her, that her release was revoked improperly, or that the remedy would be her immediate release.  Answer at 3–6.

**IV.**

**LEGAL STANDARD**

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c); <u>Magana-Pizano v. I.N.S.</u>, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' ").  In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence.  <u>Lambert v. Blodgett</u>, 393 F.3d 943, 970 n.16 (9th Cir. 2004); <u>Bellew v. Gunn</u>, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  <u>Demore v. Kim</u>, 538 U.S. 510, 523 (2003) (citing <u>Reno v.</u>

3

<u>Flores</u>, 507 U.S. 292, 306 (1993)).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  <u>See</u> U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  <u>See, e.g.</u>, <u>Trump v. J.G.G.</u>, 604 U.S. 670, 673 (2025) (<u>per curiam</u>) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); <u>Zadvydas</u>, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); <u>Hussain v. Rosen</u>, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  <u>Hernandez v. Sessions</u>, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  <u>Zinermon,</u> 494 U.S. at 127.  Indeed, the Due Process Clause provides both procedural and substantive protections.  <u>See, e.g.</u>, <u>Regino v. Staley</u>, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).  <u>See</u> <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the <u>Mathews</u> test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under <u>Mathews</u>, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and

4

the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno, 507 U.S. at 302.  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

**V.**

**ANALYSIS**

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an

5

opportunity to be heard. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). See also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen that had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

It is undisputed that Petitioner entered the United States in 2024. Pet. at 4; Answer at 3. It is further undisputed that Petitioner was briefly detained and then released out of custody on parole.[3] Id. Thus, the Court concludes that once Petitioner was released from custody, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and

---

3 The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest.  See Mathews, 424 U.S. at 334–35.  To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Id. at 335.

It is also undisputed that Petitioner was arrested by immigration authorities on January 27, 2026, without prior notice or a pre-deprivation hearing.  Pet. at 7, 17.  Respondents argue that Petitioner's arrest is a change of circumstances that justifies her detention and that because of her arrest she is subject to mandatory detention pursuant to INA § 236(c).  See Answer at 4 (arguing "the government's authority to re-detain individuals previously released by ICE is discretionary, and it does not require the type of intensive threshold evidentiary procedure that Petitioner suggests.").  However, the fact Petitioner violated a condition of [release], without more, does not justify completely stripping [her] of [her] due process rights."  Awa v. Noem, No. 2:26-CV-00922, 2026 WL 943593, at *2 (W.D. Wash. Apr. 8, 2026).  "It is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority—through detention or otherwise."  Alvarenga Matute v. Wofford, 807 F. Supp. 3d 1120, 1128 (E.D. Cal. 2025) (citing Hernandez, 872 F.3d at 990 n.17 (internal quotation marks omitted)).  "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."  Perez Bueno, 2026 WL 309934, at *4 (citing E.A. T.-B. v. Wamsley, 795 F.

7

Supp. 3d 1316, 1322 (W.D. Wash. 2025)).

Furthermore, the risk of erroneous deprivation is high because Respondents contend that Petitioner is subject to mandatory detention under the Laken Riley Act, however, this argument is clearly foreclosed by the record for two reasons. First, Petitioner was allegedly arrested for violation of California Penal Code § 496(A) – Receiving Stolen Property ("Section 496(a)"). The Laken Riley Act requires mandatory detention for certain noncitizens who are "charged with, [] arrested for, [] convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, [or] shoplifting…" INA § 236(c)(1)(E)(i)–(ii). The essential elements of Section 496(a) are "knowingly buying, receiving, concealing, or withholding property that has been stolen," which are separate and distinct from the essential elements of burglary, theft, larceny, or shoplifting. See Reply at 3 (citing Cal. Penal Code § 496(a)). Second, Petitioner was not charged with or convicted of the crime alleged. See Dkt. 9-1 at 2. Under California law, when an individual is arrested but released with no filed accusatory pleading, "the arrest shall not be deemed an arrest, but a detention only." Tutka v. Noem, No. 1:26-CV-00706-TLN-EFB, 2026 WL 743354, at *3 (E.D. Cal. Mar. 17, 2026) (citing Cal. Penal Code § 849.5). Being detained for a crime is insufficient to subject a noncitizen to mandatory immigration detention under § 1226(c)(1)(E). Id. Indeed, to avoid "serious due process concerns, . . . courts have construed the Laken Riley Act to apply only where an individual is currently charged with or arrested for the enumerated crimes, and conclud[ed] [that] mandatory detention is not required when charges are never filed, or where an individual has been acquitted." Singh v. Chestnut, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (citations omitted); accord Hodgson v. Warden Mesa Verde Ice Processing Ctr., 2026 WL 1983957, at *2 (E.D. Cal. July 9, 2026). As set forth above, it is undisputed that Petitioner is not currently charged with or arrested for any enumerated offense. Therefore, Petitioner is not subject to mandatory detention pursuant to the Laken Riley Act. "[T]he risk of an erroneous deprivation [of liberty] is

8

high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. Pinchi, 792 F. Supp. 3d at 1035 (citing Zadvydas, 533 U.S. at 693-94). Therefore, the Court concludes that the risk of erroneous deprivation of Petitioner's liberty interest is significant. Pinchi, 792 F. Supp. 3d at 1035.

The government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Becerra, 787 F. Supp. 3d at 1094). "In immigration court, custody hearings are routine . . . ." Singh, 803 F. Supp. 3d at 1048. There is no indication that providing proper notice and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

The Court concludes that Petitioner's detention by immigration authorities on January 27, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Zinermon, 494 U.S. 113, 127 ("Generally, the Due Process Clause 'requires some kind of a hearing

9

before the State deprives a person of liberty or property.'").

The fact that Petitioner could receive a post-deprivation bond hearing after her re-detention by immigration authorities does not remedy the violation of Petitioner's procedural due process rights. See, e.g., Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B, 795 F. Supp. 3d at 1324 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. & Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Indeed, because Respondents contend that Petitioner is subject to mandatory detention, a bond hearing would likely be futile. Thus, the Court concludes that ordering a bond hearing would be insufficient to remedy the violation of Petitioner's due process rights in this case.

Given this violation of Petitioner's due process rights, the Court further

10

concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on her prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by

clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

Finally, as to Petitioner's request for an award of attorneys' fees and costs, the Court will consider an application under the Equal Access to Justice Act requesting costs and reasonable attorneys' fees that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

IT IS ORDERED: (1) the Petition is **GRANTED** (2) Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c), but instead is detained pursuant to 8 U.S.C. § 1226(a) (3) Respondents are **ORDERED** to immediately release Petitioner **Chunyan Wang (A# 226-159-286)** from custody on her prior conditions of release, if any, and immediately return any confiscated property and documents to Petitioner upon release (4) Respondents are **ENJOINED** from re-detaining Petitioner without first providing Petitioner with individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof. Petitioner shall not be detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there are no conditions or combination of

conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community; (5) Respondents are **ORDERED** to file a notice of compliance within twenty-four hours.

DATED:   July 31, 2026

_____
HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

13